```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: October 26, 2020
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
                                         :    **15 CR 836(VM)**
         -against-                       :    **20 Civ. 1151 (VM)**
                                         :         **ORDER**
JOSEPH STEELE,                           :
                                         :
              Defendant.                 :
----------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

The Clerk of Court is respectfully directed to update Defendant Joseph Steele's address to:

> Joseph Steele #73353-054
> F.C.I. Hazelton
> P.O. Box 5000
> Bruceton Mills, WV 26525

The Clerk of Court is further directed to mail a copy of this order and its attachments to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          26 October 2020

_____
Victor Marrero
U.S.D.J.

1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              15 Cr. 836 (VM)

 5
     JOSEPH STEELE,
 6
                                                Sentence
 7                   Defendant.

 8   ------------------------------x

 9                                              New York, N.Y.
                                                February 3, 2017
10                                              3:00 p.m.

11
     Before:
12
                         HON. VICTOR MARRERO,
13
                                                District Judge
14
                              APPEARANCES
15
16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     JILAN J. KAMAL
18        Assistant United States Attorney

19   NATHANIEL MARMUR
          Attorney for Defendant
20

21

22

23

24

25
```

1           THE COURT: Good afternoon. Thank you. Be seated.
2           This is a proceeding in the matter of United States v.
3    Steele, docket No. 15 Cr. 836.
4           Counsel, please enter your appearances for the record.
5           MS. KAMAL: Good afternoon, your Honor. Jilan Kamal,
6    for the government.
7           MR. MARMUR: Good afternoon, your Honor. Nathaniel
8    Marmur, for the defendant.
9           THE COURT: The Court notes that the defendant is
10   present in the courtroom seated next to his attorney.
11          The Court scheduled this proceeding as the sentencing
12   of the defendant in this matter. I have read and reviewed the
13   presentence investigation report dated January 20, 2017, which
14   was prepared in connection with today's sentencing of
15   Mr. Steele. I've also read the submission from defense counsel
16   dated January 30, 2017, and the submission from the government
17   dated January 21, 2017. I've also received a letter from
18   defense counsel dated February 3, 2017, just a few minutes ago.
19          Ms. Kamal, did you receive a copy of this letter?
20          MS. KAMAL: Yes, I did, your Honor.
21          THE COURT: All right. Ms. Kamal, has the government
22   read and reviewed the presentence report?
23          MS. KAMAL: Yes, we have, your Honor.
24          THE COURT: Does the government have any objections to
25   the report to raise at this time?

1            MS. KAMAL:  We do not.

2            THE COURT:  Thank you.

3            Mr. Marmur, have you read and reviewed the presentence
4    report?

5            MR. MARMUR:  I have, your Honor.

6            THE COURT:  Have you had an opportunity to discuss it
7    with Mr. Steele?

8            MR. MARMUR:  Yes, we have, your Honor.

9            THE COURT:  Do you have any objections to raise to the
10   report at this time?

11           MR. MARMUR:  No, your Honor, other than I guess
12   obviously with respect to the determination of whether he's an
13   armed career criminal, as set forth in my letter.

14           THE COURT:  I will come back to that in a moment.

15           MR. MARMUR:  Yes.

16           THE COURT:  Mr. Steele, please rise.

17           Have you read and reviewed the presentence report?

18           THE DEFENDANT:  Yes.  Yes, your Honor.

19           THE COURT:  And have you discussed it with your
20   attorney?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  You may be seated.

23           On October 18, 2016, Mr. Steele was found guilty of
24   Count One of indictment 15 Cr. 836, felon in possession of a
25   weapon, in violation of 18 U.S.C. 922(g)(1).

           Ms. Kamal, does the government have any additional
comments in connection with sentencing?
           MS. KAMAL: We do not, your Honor. We would rest on
our submission. I would, however, note for the Court it's not
an objection to the presentence report, it's just one minor
correction to the presentence report.
           THE COURT: All right.
           MS. KAMAL: This is in the section of recommendations.
It is at page 22. It is the paragraph that begins, "We further
recommend." At the end of that paragraph, it notes that
there's a search condition based on the defendant's criminal
conduct here, which included multiple firearms. I just wanted
to make sure that the record was clear, the government only
recovered and he was only charged with one firearm. I did want
to make sure, since this document is one that will follow him,
that that was correct.
           THE COURT: The Court will direct that that correction
be made.
           Mr. Marmur.
           MR. MARMUR: Yes, your Honor. Mr. Steele has eagle
eyes. He just pointed out to me that on page 21 under
justification, the first sentence reflects incorrectly that he
pleaded guilty to the charge. As your Honor noted, he was
actually found guilty after trial. And while it's on my mind,
I believe that there was a reference in the PSR, or there may

1   have been a reference, to more than one firing of the weapon,
2   and I believe the evidence showed that there was just one
3   discharge.  To the extent that the report has more than one, I
4   believe that should be corrected, and I'll see if I can
5   identify exactly where that was.
6            THE COURT:  The Court will direct that those
7   corrections be made as well.
8            Mr. Marmur, do you have any additional comments in
9   connection with sentencing?
10           MR. MARMUR:  I apologize.  I did just locate it.  It
11  was in that same paragraph, under justification, the fourth
12  line down.  It says he shot a handgun several times, and I
13  think all the parties would agree that the evidence at trial
14  showed a single discharge.
15           THE COURT:  All right.
16           MR. MARMUR:  I do have a few brief comments for your
17  Honor.  First of all, I want to apologize again with respect to
18  the lateness of the letter I filed today.  I wanted to make
19  sure, given some of the confusion in the law, that we had fully
20  preserved Mr. Steele's rights with respect to the ACCA charge,
21  and so rather than just stating it orally, I thought it best if
22  I at least put it down on paper.
23           THE COURT:  All right.  Why don't we turn to that,
24  Mr. Marmur.  The issues you raise conceivably might have an
25  impact on the sentence here.  As you point out, the law in this

H23WsteS

area is in confusion, to say the least.

MR. MARMUR: It is.

THE COURT: There are cases pending in the Second Circuit that may shed some light and there are cases pending in the Supreme Court, as you indicate, that also may shed light or perhaps confuse it even more. The question is, however, to the extent you're raising an issue that conceivably might be clarified by any of these appellate decisions, is it prudent to proceed with sentencing or more prudent to wait until those matters are better clarified?

MR. MARMUR: That's a good question, your Honor. Originally, the government and I had discussed the possibility of adjourning sentence until after the Beckles case was decided by the Supreme Court. Mr. Steele has been in pretrial lock-up now for more than 16 months, and obviously we're not sure when the Supreme Court will decide the Beckles case. I thought, and I don't want to speak for the government, correctly or incorrectly, that we should go ahead and get Mr. Steele sentenced so he can get to a facility where he can engage in programs and get settled. I appreciate that by raising the issue I put the Court in a position that it has to decide the issue. I also recognize that this particular issue can deserve quite a bit of attention, and I'm not sure at the end of the day that substantial briefing would shed more light on it than we have right now.

1    THE COURT:  I would not encourage any briefing at this
2    stage in this court, at this time.
3    MR. MARMUR:  My sense was all of that would be
4    somewhat a fool's errand given that the Supreme Court is soon
5    to decide it.  What I thought at least was that as long as we
6    make sure that we preserve his rights, we don't waive anything
7    with respect to his ability to challenge the ACCA on appeal or
8    potentially collaterally, if necessary, that it made sense to
9    go ahead with the sentencing.  If the law comes out against the
10   defense, then so be it; the issue will have gone away.  If it
11   comes out in favor of the defense, if there's argument there,
12   our position would be we've preserved our right to be able to
13   litigate it.
14   The government can certainly speak for itself as to
15   what position they will take, but I think generally their
16   position has been that if things change in that regard, the
17   defendant should be entitled to at least try to obtain the
18   benefit of the change in law.  Right now the law -- and I don't
19   want to mischaracterize it, there are aspects of it that have
20   been beneficial to the defense; I'm not quite sure that our
21   specific situation fits into what the prevailing law is with
22   respect to New York robbery, in particular the fourth
23   subsection of that which involves a gun, but there have been
24   some very good arguments, and I cited to the Court the Stuckey
25   case before Judge Oetken.


|     |                                                                   |
| --- | ----------------------------------------------------------------- |
| 1   | THE COURT:  Judge Oetken, yes.                                    |
| 2   | MR. MARMUR:  And he rejected it, so I wanted to be                |
| 3   | forthright with the Court that I'm not citing a case where the    |
| 4   | defense has prevailed, but I think even he recognized it was an   |
| 5   | interesting issue that was created.  I guess it's a long-winded   |
| 6   | way of saying I think it's in Mr. Steele's best interest to go    |
| 7   | forward with the sentencing at this time so long as we haven't    |
| 8   | waived our rights going forward, and that was the purpose of      |
| 9   | the letter today, just to make absolutely sure of that.  Again,   |
| 10  | I wish I had put it in earlier so that the Court would have       |
| 11  | more time to reflect on it, but I wanted to make sure that I      |
| 12  | hadn't overlooked anything.                                       |
| 13  | THE COURT:  All right.  Thank you.                                |
| 14  | Ms. Kamal, does the government have any views on this             |
| 15  | matter?                                                           |
| 16  | MS. KAMAL:  Just very briefly, your Honor.  To be                 |
| 17  | clear, the shifting sands around the definition of crimes of      |
| 18  | violence have affected how robbery in the first degree, which     |
| 19  | is one of the defendant's predicate offenses, have been handled   |
| 20  | in this circuit for the purposes of ACCA designation and for      |
| 21  | career offender designation.  That conversation with defense      |
| 22  | counsel, both Mr. Marmur and his predecessor, Mr. Marvinny,       |
| 23  | have been ongoing since the beginning.  It has been the           |
| 24  | government's position from the outset, from the Jones case,       |
| 25  | which was issued by the Second Circuit but then vacated, and      |

H23WsteS

now through the pending <u>Beckles</u> case before the Supreme Court, that "robbery in the first degree/displays a firearm" is in fact a qualifying crime of violence for the purpose of ACCA.

The government does also recognize that the law is actively changing and actively under consideration, so to the extent that Mr. Marmur's letter has come late in the day, the government has certainly not been sandbagged in any way by this, and other defendants who have already been sentenced under ACCA, under what may have been now disqualified definitions of crime of violence, have had their opportunity to litigate that. At this point, the government reaffirms its position that "robbery in the first degree/displays what appears to be a firearm" is a qualifying ACCA predicate, but we also recognize the defense's position, that if there were a change in the law that could be beneficial to the defense, if he wishes to preserve the issue for appeal, we certainly would not try to obstruct that.

THE COURT: Thank you.

Mr. Steele, please rise. Is there anything you would like to say on your own behalf before the Court imposes sentence?

THE DEFENDANT: Yes, sir.

THE COURT: You may.

THE DEFENDANT: First of all, I want to bring to your attention, your Honor, that since my release in 2002, I worked

for a security company called Tightwad Security.  I wasn't a security guard, but I did work in the buildings to report damages to doors or any part of the building that was damaged, and I would report that to management, and I did this in several places around the Bronx: Concord Village; Beekman Houses; Lafayette Morrison Houses, and Morrisania at 149th.

From there I moved to Pennsylvania, where I met Kristie Raffensberger, where I worked for her, and she didn't pay me the amount that I was supposed to be paid, but I helped her with many of her properties.  We had fixed walls, paint walls, do plumbing and do electricity work.  While I was in prison for my robbery charge, I ascertained the building maintenance job because I was well equipped to do the job.

From there, I helped take care of my kids.  Their mother still requires me to help; been an active father in their life, taking them to school, going to pick her up.  I'm going to parents and teachers meetings.

When I was in junior high school, I had my daughter DeJenay Fowler.  I wanted to quit school, but I spoke to the guidance counselor, and she put me in this program where, that I would work, earn five credits for that, earn credits and get paid every two weeks and where they had me working at was Bronx-Lebanon, first division located on 169th, Fulton division.  I worked there --

(Defendant and counsel conferred)

|   |   |
|---|---|
| 1 | THE DEFENDANT: And I also want to read something into |
| 2 | the record. I'm not here to place blame on anyone or make |
| 3 | somebody look bad, because that's not my intentions, but I had |
| 4 | wrote a letter that had been heavy on my heart, and I wanted to |
| 5 | write this down just for it to be on record. |
| 6 | "Good afternoon, Judge Marrero. Thank you for |
| 7 | allowing me this opportunity to address the honorable court. |
| 8 | First, I would like to let you know I object to the trial. I |
| 9 | felt like I wasn't granted a fair trial. I was denied |
| 10 | witnesses to testify on my behalf; also evidence to be |
| 11 | submitted on my behalf, that would have shined light on the |
| 12 | jury's decision-making and deliberation. I informed my |
| 13 | attorney, Mr. Marmur, on many occasions before trial that I |
| 14 | wanted Officer Perdomo to be called into trial to testify and |
| 15 | be questioned, but my attorney told me, No, you don't need him, |
| 16 | it would be a bad -- it would be a bad idea. But I continued |
| 17 | to let my attorney know that I wanted Officer Perdomo to |
| 18 | testify all the way up to the day of trial. But my attorney |
| 19 | was determined not to let Officer Perdomo to testify. And by |
| 20 | not letting Officer Perdomo testify, it gave Officer Burgos |
| 21 | room to lie on the stand. |
| 22 | I have the right to face my accuser. I was denied |
| 23 | that right. |
| 24 | THE COURT: Mr. Steele, I'm going to stop you because |
| 25 | there was a trial here. You were found guilty based on the |

1    evidence at trial.  If you have difficulties or questions or
2    objections to the verdict, this is not the place in which to
3    retry the case.
4            THE DEFENDANT:  I understand, your Honor.
5            THE COURT:  You can submit motions for habeas corpus
6    or other ways of challenging the verdict, but this is not the
7    occasion to do that.
8            THE DEFENDANT:  I just wanted to, I just wanted to
9    bring stuff to your attention.  That's what -- you asked me if
10   I had anything to say.
11           THE COURT:  That's what the posttrial relief mechanism
12   provides, but this is not the occasion to do that.
13           THE DEFENDANT:  Thank you, your Honor, for allowing me
14   to speak.
15           THE COURT:  There is a procedure, Mr. Steele, under
16   28, U.S. Code, Section 2255 where you can make arguments and
17   raise your challenges to the verdict or to the representation
18   of you in the trial.  Mr. Marmur, if you wish, can explain that
19   process to you.
20           Let's proceed then.
21           Mr. Marmur, did you have anything else that you wanted
22   to say?
23           MR. MARMUR:  I will be very brief.  I don't want to
24   repeat what's in the letter, but just to highlight some things,
25   I think Mr. Steele, despite the fact that he's sitting here

convicted because we didn't win, and I appreciate very much that he may take issue with some decisions, and as your Honor correctly explained, there are other forums for him to try to vindicate that, but even through that, I think we've been able to maintain a very good working relationship, and I've come to know him and like him and respect him.

He had an upbringing which was so unbelievably difficult, it's hard to imagine growing up in an abandoned building, crowded, with lights being turned off, no male role model for him, surrounded by drugs and violence. It would be fair to say he overcame that, because your Honor has before you the presentence report, which does lay out a significant criminal history, but as Mr. Steele was just expressing, he was never lazy. He always worked. Every time he was out, he worked hard, manual labor to support himself and his family.

He has, to his large credit, remained free of alcohol and drugs, something that has plagued many, many people who grew up the way he did, and in the last 16 months, he's been incarcerated at the MCC and the MDC, and despite that and despite preparing for trial, he has shown that he really can follow the rules and even thrive. As I pointed out, his work has been exemplary. He's gotten great reports from the Bureau of Prisons. He earned his GED, I think, shortly before our trial preparation began.

In sum, we're here and he's facing a very, very long

time in prison.  I think probation recognizes fairly that 15 years is a very long sentence, and in light of all the factors here, it is enough.  He will be in his mid-50s when he's released, and my guess is by then he will have achieved many positive things in jail and will come out as somebody who is very unlikely to recidivate at that age.

We would ask the Court to impose the mandatory minimum sentence.  Thank you.

THE COURT:  Thank you.

In accordance with the decision by the United States Supreme Court in United States v. Booker, while the United States Sentencing Guidelines are not mandatory, the Court nonetheless "must consult those guidelines and take them into account when sentencing."  Therefore, the Court has considered the findings of fact stated in the presentence investigation report as well as the guidelines analysis and the recommendations contained therein.  The Court has weighed this information along with the factors listed in 18 U.S.C. 3553(a) in coming to its final sentencing decision in this case.

The Court adopts the factual recitation in the presentence investigation report regarding the criminal history category, offense level, and sentencing range.  Therefore, the Court finds that under the guidelines Mr. Steele's offense level amounts to 33 and his criminal history category falls into category VI.  The guidelines range of imprisonment for

1  that offense level and criminal history category is 235 to 293
2  months.
3      Mr. Steele was found guilty after trial of one count
4  of being a felon in possession of a weapon.  The probation
5  office has recommended the Court impose a sentence of 180
6  months.  Subsection (a)(1) of 18 U.S.C. Section 3553 requires
7  that courts take into consideration "the nature and
8  circumstances of the offense and the history and
9  characteristics of the defendant."  Subsection (a)(2) of 18
10 U.S.C. section 3553 requires that the Court consider the need
11 for the sentence to promote certain objectives of the criminal
12 justice system; namely, punishment, specific and general
13 deterrence, and rehabilitation.  Pursuant to Section
14 3553(a)(6), the Court is also directed to consider the need to
15 avoid unwarranted sentencing disparities among defendants with
16 similar records and similar offenses in other cases, as well as
17 in connection with the case at hand.
18     Mr. Steele, please rise.  Taking into account the
19 nature and circumstances of the offense and the history and
20 characteristics of the defendant, and considering all of the
21 factors listed in 18 U.S.C. Section 3553, the Court finds that
22 a sentence of 180 months is reasonable and appropriate, in that
23 such a term is "sufficient, but not greater than necessary" to
24 promote the proper objectives of sentencing.
25     Upon your release from imprisonment, you shall be

placed on supervised release for a term of five years.

I will not impose a fine because the Court has determined that you do not have the ability to pay such a fine. However, you are ordered to pay to the United States a special assessment of $100, which shall be due immediately.

Ms. Kamal, is there forfeiture in this case?

MS. KAMAL:  There is not, your Honor.

THE COURT:  Mr. Steele, you must comply with standard conditions 1 through 13 of supervised release and the following mandatory conditions:  You shall not commit another federal, state, or local crime; you shall not illegally possess a controlled substance; you shall not possess a firearm or destructive device; you shall refrain from unlawful use of any controlled substance; you shall submit to one drug testing within 15 days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

You shall cooperate in the collection of DNA, as directed by the probation officer.

In addition, you shall obey the following special conditions:  You shall submit your person, residence, place of business, vehicle, or any other property or electronic devices under your control to search on the basis that the probation officer has reasonable suspicion that contraband or other evidence of a violation of the conditions of supervised release

 1    may be found.  The search must be conducted at a reasonable
 2    time and in a reasonable manner.  Failure to submit to search
 3    may be grounds for revocation.  You shall inform any other
 4    residents that the premises may be subject to search pursuant
 5    to this condition.
 6             You shall also participate in an outpatient mental
 7    health treatment program approved by the United States
 8    Probation Office.  You shall continue to take any prescribed
 9    medications unless otherwise instructed by the healthcare
10    provider.  You shall contribute to the cost of services
11    rendered based on your ability to pay or the availability of
12    third-party payments.  The Court authorizes the release of
13    available psychological and psychiatric evaluations and
14    reports, including the presentence investigation report, to the
15    healthcare provider.
16             Mr. Steele, do you understand each of these
17    conditions?
18             THE DEFENDANT:  Yes.  Yes, your Honor.
19             THE COURT:  You shall report to the nearest probation
20    office within 72 hours of release from custody.  The Court
21    recommends that you be supervised by the district of residence.
22             In imposing the sentence, I have taken into account a
23    number of considerations:  Mr. Steele's background and
24    circumstances; the difficulty of his development as a child and
25    subsequent difficulties that may have had some role in

1   contributing to his career as a criminal.  I've taken into
2   account indications that Mr. Steele has during incarceration
3   made efforts to rehabilitate himself with education and good
4   behavior.  I also take into account Mr. Steele's age and the
5   statistical indications that at the time that he would be
6   released, the chances of recidivism will be much lower.
7            Mr. Steele, to the extent you have the right to appeal
8   your sentence and you're unable to pay the cost of appeal, you
9   have the right to apply for leave to appeal *in forma pauperis*,
10  meaning as a poor person.  If you make such a request, the
11  clerk of the court must immediately prepare and file a notice
12  of appeal on your behalf.
13           Do you understand your right to appeal to the extent
14  it may exist?
15           THE DEFENDANT:  Yes.
16           THE COURT:  The sentence as stated is imposed.
17           Ms. Kamal, are there any remaining counts or
18  underlying indictments that need to be dismissed at this time?
19           MS. KAMAL:  There are not, your Honor, although it may
20  simply be my poor hearing, but did the Court impose the
21  mandatory special assessment of $100?
22           THE COURT:  Yes.
23           MS. KAMAL:  Thank you, Judge.  Sorry.
24           THE COURT:  Is there anything else, Mr. Marmur?
25           MR. MARMUR:  Two brief points.  One is I just want to

H23WsteS

1  make clear -- he wants to say thank you to your Honor, the
2  third brief point.  Because he did go to trial, I believe
3  Mr. Steele would have the right to appeal the verdict and the
4  sentence.  I want the record to reflect that a notice of appeal
5  should be filed; he's directed me to file that and we will
6  challenge both the verdict and the sentence.
7           And the final point, Mr. Steele has family, including
8  two young children, in Pennsylvania, and to the extent that the
9  Court's practice allows a recommendation, we would ask that
10 Mr. Steele be designated either to Fort Dix or to a facility in
11 Pennsylvania to facilitate visits by family.
12          THE COURT:  The Court will so recommend.
13          Thank you.  Have a good day and a good weekend.
14          MR. MARMUR:  Thank you, your Honor.
15          MS. KAMAL:  Thank you, your Honor.
16          (Adjourned)